**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| THE SUNSHINE LADY FOUNDATION, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> ALEXANDER ROZEK, as Trustee of the Doris Buffett Revocable Trust, <br><br> *Defendant*. | Civil Action No. 20-12146 (LTS) <br><br> **ORAL ARGUMENT REQUESTED** |

**DEFENDANT ALEXANDER ROZEK'S, AS TRUSTEE OF THE DORIS BUFFETT REVOCABLE TRUST, MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS THE COMPLAINT**

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1
FACTUAL BACKGROUND ...................................................................................................... 3
LEGAL STANDARD .................................................................................................................. 5
ARGUMENT ................................................................................................................................ 6
I.      This Court Should Dismiss Plaintiff's Complaint Because the Release Serves as a Complete Bar to Plaintiff's Cause of Action. ................................................................ 6
II.     Plaintiff is Not Entitled to Declaratory Judgment............................................................ 10
CONCLUSION ........................................................................................................................... 13

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................................................. 5, 6

*Atieh v. Riordan*,
    727 F.3d 73 (1st Cir. 2013) ............................................................................................ 5

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .................................................................................................. 5, 6

*Brokers, Inc. v. High Point City Board of Edu.*,
    33 N.C. App. 24 *disc. rev. denied*, 293 N.C. 159 (1977) ............................................ 6-7

*Chemimetals Processing, Inc. v. Schrimsher*,
    140 N.C. App. 135 (N.C. Ct. App. 2000) ........................................................................ 7

*In re. Dolphinite, Inc.*,
    355 B.R. 391 (Bankr. D. Mass. 2006) .......................................................................... 12

*Eaton v. Town of Townsend*,
    No. 18-CV-11824(LTS), 2019 WL 1061184 (D. Mass. Mar. 6, 2019) ............................ 6

*Ernst & Young v. Depositors Economic Protection Corp.*,
    45 F.3d 530 (1st Cir. 1995) .................................................................................... 11, 12

*Fin. Servs. of Raleigh, Inc. v. Barefoot*,
    163 N.C. App. 387 (2004) ........................................................................................... 8-9

*Gagliardi v. Sullivan*,
    513 F.3d 301 (1st Cir. 2008) .......................................................................................... 5

*Gravelle v. Hudson Lock LLC*,
    No. 16-CV-12548(LTS), 2018 WL 627373 (D. Mass. Jan. 30, 2018) ............................ 7

*Hardin v. KCS Int'l, Inc.*,
    199 N.C. App. 687 (N.C. Ct. App. 2009) ........................................................................ 9

*Hutchinson v. Bank of America, N.A.*,
    No. 18-CV_12443 (LTS), 2019 WL 2870303 (D. Mass. July 3, 2019) .................... 10, 11

*Ioannou v. Merrimack Mut. Fire. Ins. Co.*,
    No. 995902J, 2001 WL 1809800 (Mass. Super. Ct. Dec. 20, 2001) ............................ 12

*MacDonald v. Jenzabar*,
    92 Mass. App. Ct. 630 (Mass. App. Ct. 2018) ................................................................ 8

*Mass. Ass'n of Indep. Ins. Agents & Brokers, Inc. v. Comm'r of Ins.*,
    373 Mass. 290 (Mass. 1977) ................................................................................... 12

*McGladrey, Hendrickson & Pullen v. Syntek Fin. Corp*,
    92 N.C. App. 708 (N.C. Ct. App. 1989) ..................................................................... 8

*Merrimon v. Postal Telegraph-Cable Co.*,
    207 N.C. 101 (N.C. 1934) ................................................................................. 7, 8

*Renfro v. Meacham*,
    50 N.C. App. 491 (N.C. Ct. App. 1981) ..................................................................... 7

*Specialty Mktg. Grp. v. Katz*,
    No. 13-CV-12636(LTS), 2014 WL 2453105 (D. Mass. May 30, 2014) ................... 10, 11

*Tocci Bldg. Corp., of New Jersey, Inc. v. Virginia Sur. Co.*,
    750 F. Supp. 2d 316 (D. Mass. 2010) ................................................................. 11-12

*Van Keuren v. Little*,
    165 N.C. App. 244 (N.C. Ct. App.), *disc. rev. denied*, 359 N.C. 197 (N.C. 2004) ........... 9

*Walker v. Driven Holdings, LLC*,
    No. 15-CVS-17981(JLG), 2017 NCBC LEXIS 70 (N.C. Super. Ct. Aug. 7, 2017) .......... 7

*Watterson v. Page*,
    987 F.2d 1 (1st Cir. 1993) ....................................................................................... 2

*Weaver v. St. Joseph of the Pines, Inc.*,
    187 N.C. App. 198 (N.C. Ct. App. 2007) ............................................................. 7, 8

**Rules/Statutes**

Fed. R. Civ. P. 12(b)(6) ............................................................................................. 1, 5

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant Alexander Rozek, as Trustee of the Doris Buffett Revocable Trust ("Defendant" or "Trustee"), submits this Memorandum of Law in Support of His Motion to Dismiss the single count for declaratory judgment in the Complaint brought by Plaintiff The Sunshine Lady Foundation, Inc. ("Plaintiff" or "SLF").

## PRELIMINARY STATEMENT

This action is barred by the Settlement and Release entered into by the parties in December 2017. Defendant Alexander Rozek is the late Ms. Doris Buffett's grandson, and he is Trustee of the Doris Buffett Revocable Trust (the "Trust"). Ms. Buffett founded SLF in 1996 and was widely celebrated as *the* Sunshine Lady. From inception, Ms. Buffett devoted her time and money to charitable endeavors through SLF, including the initiative she led and fostered for years, known as the "Letters Program." The Letters Program made grants in response to letters sent to Ms. Buffett and her brother, Warren Buffett, from individuals seeking financial assistance. After two decades of active service to others, Ms. Buffett experienced health issues that caused her to step back from her role at SLF. It was at that point that Ms. Buffett's purported "friends" and SLF's non-family Board directors—Anne "Mitty" Ewing Beal, Diane Grimsley, and Rebecca Currie— saw and seized a takeover opportunity of SLF. The non-family directors not only discontinued Ms. Buffett's Letters Program, but they also took steps to remove Ms. Buffett from the Board of SLF—the organization *she founded*. As a result of these and other duplicitous activities, Mr. Rozek grew suspicious of how those Board directors were actually operating SLF. Accordingly, he requested a forensic audit of its finances. Mr. Rozek also established a new charitable entity to continue his grandmother's beloved Letters Program. With rising tensions between the Buffett family and the non-family directors, the parties decided to sever ties and go their separate ways. Accordingly, on December 11, 2017, the parties entered into a comprehensive Settlement and

1

Release (the "Settlement Agreement"), attached hereto as <u>Exhibit A</u>.  The Settlement Agreement contained broad, mutual General Releases (the "General Release(s)") in order to, among other things, resolve all claims, rights or causes of action between them, whether known or unknown (including existing but unknown claims), by way of the mutual General Releases.  Notably for the purposes here, the General Release running from SLF specifically released Ms. Buffett's trustees.

Several years then passed without incident.  Ms. Buffett passed away on August 4, 2020. A mere three months later, SLF brought this action seeking a declaration that—despite the Settlement Agreement and General Releases—SLF is purportedly a beneficiary of the Trust.  The crux of Plaintiff's allegations is that SLF should be declared a "beneficiary" of the Trust, based on wild claims and its own say-so.  Yet the so-called claim and rights that SLF asserts here are the very same as those it unconditionally released and forever discharged in the General Release, which is a complete bar to SLF's cause of action here.[1]  Additionally, even apart from the General Release, Plaintiff's Complaint amounts to nothing more than threadbare and conclusory statements, barren of facts sufficient to support a plausible claim that it is a "beneficiary" of the Trust. Accordingly, Plaintiff's Complaint should be dismissed, with prejudice.

---

[1] The Court may consider the Settlement Agreement for purposes of Defendant's Motion to Dismiss because the document is "sufficiently referred to in the complaint," *see* Compl. ¶¶ 42-44, and further because it is a document "the authenticity of which [is] not disputed by the parties." *Watterson v. Page*, 987 F.2d 1, 3-4 (1st Cir. 1993).

## FACTUAL BACKGROUND[2]

Defendant Alexander Rozek is the grandson of the late Ms. Doris Buffett. Compl. ¶ 2 (Dkt. No. 1-1). Defendant is the sole Trustee of the Doris Buffett Revocable Trust. *Id.*

Plaintiff SLF is a not-for-profit corporation founded by Ms. Buffett in 1996, located in North Carolina. Compl. ¶¶ 1, 5. Ms. Buffett was known as *the* Sunshine Lady, dedicating her time and resources to charitable endeavors, including leading the initiative known as the "Letters Program," through which Ms. Buffett received and responded to requests for funds and help sent to her and her brother Warren Buffett. *Id.* ¶¶ 6, 10. After nearly twenty years of service, Ms. Buffett experienced health issues beginning in approximately 2015, forcing her to take a less active role at SLF. *Id.* ¶ 18. Long before her health issues arose, Ms. Buffett named her grandson, Mr. Rozek, as her attorney-in-fact through a Durable Power of Attorney. *Id*. ¶ 17.

In 2016, while Ms. Buffett was experiencing health issues, the non-family directors of SLF—Anne "Mitty" Ewing Beal, Diane Grimsley, and Rebecca Currie—discontinued Ms. Buffett's beloved Letters Program. *Id*. ¶ 30. They also admittedly sought Ms. Buffett's removal from SLF's Board. *Id.* ¶ 39. In light of the non-family directors' actions, Mr. Rozek requested a forensic audit of its finances. *Id*. ¶¶ 31–34, 36–37. Because the three non-family directors had terminated the Letters Program, in 2016 Mr. Rozek established a new charitable organization, the Sunshine Lady Humanitarian Grants Program, Inc. ("SLHGP"), through which his grandmother's charitable mission and the Letters Program could continue. *See id.* ¶¶ 22–23, 30–31.

---

[2] Defendant Mr. Rozek accepts the allegations in the Complaint as true only for purposes of this Motion to Dismiss, as he must. If this matter proceeds beyond the pleadings stage, then discovery and trial will reveal a starkly different picture of the non-family directors' conduct towards Ms. Buffett and her family than what is alleged in the Complaint.

3

In order to resolve their escalating disputes over the governance of SLF and secure a continued life for the Letters Program, SLF, and its non-family directors, on the one hand, and SLHGP, Ms. Buffett, and Mr. Rozek, on the other hand, executed the Settlement and Release on December 11, 2017.  Compl. ¶¶ 42–44; *see also* Ex. A, attached hereto.  The Settlement Agreement acknowledged that "the Parties have come to the realization that irreconcilable differences have arisen between certain of the Parties, which prevent their ability to work together now and in the future."  Ex. A at 1.  To that end, Ms. Buffett and Mr. Rozek agreed to resign from SLF's Board; SLF agreed to reimburse SLHGP for the administrative costs of assuming the Letters Program; and the parties exchanged the General Releases.  Compl. ¶¶ 42–44; Ex. A at 1 & ¶¶ 1, 3–5.  Specifically, SLF and its directors agreed as follows:

> **GENERAL RELEASE OF SLHGP PARTIES.**  SLF, Ms. Grimsley, Ms. Beal, and Ms. Currie, (collectively the "SLF Parties") on behalf of themselves, in all capacities, . . . do hereby irrevocably and unconditionally release, cancel, acquit, relinquish and forever discharge SLHGP, Ms. Buffett, and Mr. Rozek (collectively, the "SLHGP Parties"), in all capacities, along with the SLHGP Parties' . . . trustees, executors. . . from any and all claims, rights, demands, debts, commissions, accountings, contracts, controversies, agreements, fees, expenses, costs, liabilities, actions, or causes of action, whether known or unknown, asserted or unasserted, liquidated or unliquidated, fixed or contingent, or of any nature whatsoever, which the SLF Parties ever had or now have, arising out of any act, transaction, event or occurrence from the beginning of time through the date hereof (including existing but unknown claims).

Ex. A ¶ 3.  The General Release was mutual, pursuant to which the SLHGP Parties released the SLF Parties.  *Id.* ¶ 4.

The parties to the Settlement Agreement further agreed:

> **ADDITIONAL FACTS.**  The Parties acknowledge that they, individually or collectively, may discover facts different from or in addition to those which they now know or believe to be true with respect to the released claims, and each Party agrees that this Agreement shall continue and remain in effect in all respects notwithstanding the discovery of the existence of such different or additional facts.

*Id.* ¶ 5.

The Settlement Agreement was entered into voluntarily.  Specifically, the parties—including SLF and its non-family directors—represented that they signed the Settlement Agreement "voluntarily and without duress, after consultation with their respective counsel," and that "all Parties participated in the drafting of this [Settlement] Agreement." Ex. A ¶¶ 9(b), 9(c). The Settlement Agreement also includes an integration clause, providing that it "expresses the entire agreement between [the Parties] and which supersedes any earlier oral or written understanding or agreement." *Id.* ¶ 8.

As Ms. Buffett's health declined, Mr. Rozek stayed by his grandmother's side and remained committed to her charitable legacy, particularly relating to the Letters Program. *See* Compl. ¶¶ 46–48.  Years passed without incident, but shortly after Ms. Buffett passed away on August 4, 2020, (*id.* ¶ 48), Plaintiff SLF filed this lawsuit on November 4, 2020, in the Superior Court for Suffolk County of the Commonwealth of Massachusetts, Civil Action No. 2084CV02528, seeking a declaration that it is a purported beneficiary of the Trust. *Id.* ¶ 56.  On December 1, 2020, Defendant removed the case to this Court.  *See* Dkt. 1.

## **LEGAL STANDARD**

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), Plaintiff must allege a cognizable claim for relief.  *See Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008).  The complaint must include "factual allegations [that are] enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (complaint must "state a claim to relief that is plausible on its face").  This minimum requirement of plausibility "is a screening mechanism designed to weed out cases that do not warrant either discovery or trial." *Cf. Atieh v. Riordan*, 727 F.3d 73, 76 (1st Cir. 2013) (distinguishing the plausibility standard of review, applicable to complaints, from the review of an

agency action under the Administrative Procedure Act). "[T]hreadbare recitals of a cause of action's elements, supported by mere conclusory statements . . . are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 662 (internal citation omitted); *see also Eaton v. Town of Townsend*, No. 18-CV-11824 (LTS), 2019 WL 1061184, at *4 (D. Mass. Mar. 6, 2019) (noting that "entirely conclusory" statements are "not entitled to the general presumption of truth on a motion to dismiss"). Thus, a complaint that "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" will not survive a motion to dismiss. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

## ARGUMENT

**I.     This Court Should Dismiss Plaintiff's Complaint Because the Release Serves as a Complete Bar to Plaintiff's Cause of Action.**

In the sole count alleged in the Complaint, Plaintiff seeks a declaratory judgment that it is somehow a beneficiary of the Trust. (Compl., Count I & ¶ 56). This claim is completely barred by the plain terms of the General Release SLF executed on December 11, 2017, in which it "unconditionally release[d]," "relinquish[ed]" and "forever discharge[d]" Defendant, in all capacities, as well as Ms. Buffett's trustees, "from any and all claims, rights, demands . . . liabilities, actions, or causes of action, whether known or unknown, asserted or unasserted . . . or of any nature whatsoever, which the SLF Parties ever had or now have, arising out of any act, transaction, event, or occurrence from the beginning of time through the date hereof (including existing but unknown claims)." Ex. A ¶ 3.

North Carolina state law governs "the interpretation and enforcement of the terms" of the parties' General Release. *See* Ex. A ¶ 15. Where, as here, the language of a contract is clear, North Carolina courts look no further; instead, they apply the plain terms of the contract. *See, e.g.*, *Brokers, Inc. v. High Point City Board of Edu.*, 33 N.C. App. 24, 29 *disc. rev. denied*, 293 N.C.

6

159 (1977); *accord Weaver v. St. Joseph of the Pines, Inc.*, 187 N.C. App. 198, 207 (N.C. Ct. App. 2007) ("[i]t must be presumed the parties intended what the language clearly expresses, and the contract must be construed to mean what on its face it purports to mean") (internal citations omitted); *Renfro v. Meacham*, 50 N.C. App. 491, 496 (N.C. Ct. App. 1981) ("Where the language of a contract is clear and unambiguous, the court is obligated to interpret the contract as written . . . .") (internal citations omitted); *Chemimetals Processing, Inc. v. Schrimsher*, 140 N.C. App. 135, 138 (N.C. Ct. App. 2000) ("Since releases are contractual in nature [the courts] apply the principles governing interpretation of contracts when construing a release.").  There can be no dispute that by its plain terms, the General Release is valid and binding on SLF, Ms. Buffett and Mr. Rozek, *see* Compl. ¶¶ 42–44; North Carolina courts recognize the validity of such general releases.  *See e.g.*, *Merrimon v. Postal Telegraph-Cable Co.,* 207 N.C. 101, 105-06 (N.C. 1934) ("The language in a release may be broad enough to cover all demands and rights to demand or possible causes of action, a complete discharge of liability from one to another, whether or not the various demands or claims have been discussed or mentioned, and whether or not the possible claims are all known").

Where there is an applicable release—as there is here—any lawsuit encompassed by its terms is barred and must be dismissed as a matter of law.  *See Weaver*, 187 N.C. App. at 213 (affirming judgment as a matter of law because "the plain language of the Release bars this lawsuit"); *Walker v. Driven Holdings, LLC*, No. 15-CVS-17981 (JLG), 2017 NCBC LEXIS 70 (N.C. Super. Ct. Aug. 7, 2017) (dismissing claims based on applicability of general release); *accord, Gravelle v. Hudson Lock LLC*, No. 16-CV-12548 (LTS), 2018 WL 627373, at *4 (D. Mass. Jan. 30, 2018) (dismissing claim seeking declaratory judgment related to the scope of the Release's applicability for lack of jurisdiction "[b]ecause no claim related to conduct predating the Release,"

which barred claims known and unknown up to the date of the execution, "survives Defendant's Motion to Dismiss, [and therefore] the SAC presents no controversy 'of sufficient immediacy and reality'") (internal citation omitted).

SLF's single cause of action seeking a declaratory judgment against Defendant falls squarely within the scope of the General Release, which is unambiguous and provides that SLF released Ms. Buffett and Mr. Rozek, as well as their respective "trustees," "from any and all claims, rights . . . or causes of action, whether known or unknown," "including existing but unknown claims." Ex. A ¶ 3.  And yet in this action, SLF attempts to assert the very claim and rights that it released by now seeking to bring a "claim" against Mr. Rozek in his capacity as "trustee" of Ms. Buffett's Trust.  *See* Compl. ¶¶ 54–56.  Because Plaintiff's claim is covered by the General Release, it must be dismissed as a matter of law.  *See Weaver*, 187 N.C. App. at 207 (internal cites omitted) ("[i]t must be presumed the parties intended what the language clearly expresses, and the contract must be construed to mean what on its face it purports to mean").

Under North Carolina law "a comprehensively phrased 'general release,' in the absence of proof of a contrary intent, is usually held to discharge all and sundry claims between the parties." *McGladrey, Hendrickson & Pullen v. Syntek Fin. Corp*, 92 N.C. App. 708, 710–11 (N.C. Ct. App. 1989) (internal citations omitted) (citing *Merrimon*, 207 N.C. 101).  In this regard, North Carolina law is fully consistent with the laws of Massachusetts.  *See, e.g.*, *MacDonald v. Jenzabar*, 92 Mass. App. Ct. 630, 636 (Mass. App. Ct. 2018) ("We have a policy in our Commonwealth of giving effect to general releases, even if the parties did not have in mind at the time all matters that might be covered.").  Exceptions to a general release—*i.e.*, claims or rights that the parties intend to preserve—must be <u>clearly stated</u>.  *See McGladrey*, 92 N.C. at 710–11; *Fin. Servs. of Raleigh, Inc. v. Barefoot*, 163 N.C. App. 387, 395 (2004) ("We cannot judicially edit the release to provide an

exception not agreed to by the parties when they entered into the release."). Here, SLF granted the General Release without exception. To the contrary, SLF explicitly released Ms. Buffett's trustees of from "any and all claims, rights, demands . . . liabilities, actions, or causes of action." Ex. A ¶ 3.

To the extent Plaintiff's position is that SLF or its directors purportedly learned new or different information <u>after</u> it executed the General Release in connection with its position vis-à-vis the Trust, SLF released any and all claims on that basis as well. (*See* Compl. ¶ 47). In Paragraph 5 of the parties' Settlement Agreement, SLF agreed:

> The Parties acknowledge that they, individually or collectively, may discover facts different from or in addition to those which they now know or believe to be true with respect to the released claims, and each Party agrees that this Agreement shall continue and remain in effect in all respects notwithstanding the discovery of the existence of such different or additional facts.

Ex. A ¶ 5. When a release broadly covers all claims, including even those yet unknown—as here—the discovery of new information after the execution of the General Release is of no legal import. Any action contemplated by the General Release remains barred, per the binding language of the Settlement Agreement. *See Hardin v. KCS Int'l, Inc.*, 199 N.C. App. 687, 700 (N.C. Ct. App. 2009) (dismissing claims based on a general release because "[Plaintiff] cannot now avoid the release by arguing that subsequent to signing the release, he learned of facts that would have persuaded him not [to] sign the release when he has not demonstrated that defendants had any duty to disclose those facts."); *see also Van Keuren v. Little*, 165 N.C. App. 244 (N.C. Ct. App.), *disc. rev. denied*, 359 N.C. 197 (N.C. 2004) (no mutual mistake to call contract into question when only plaintiff believed that a certain claim was not encompassed by the release). Whether (or not) the news that Plaintiff was not a beneficiary of the Trust came as a surprise to SLF and its directors does not change the applicability or binding nature of the General Release. Indeed, SLF

9

represented that it signed the Settlement Agreement "voluntarily and without duress, after consultation with their respective counsel," and that "all Parties participated in the drafting of this [Settlement] Agreement." Ex. A ¶¶ 9(b), 9(c).

Finally, to the extent Plaintiff claims that there was an earlier or different understanding with respect to SLF's beneficial interest in the Trust, SLF is barred from taking that position. The Settlement Agreement includes an integration clause, providing that it "expresses the entire agreement between [the Parties] and which supersedes any earlier oral or written understanding or agreement." Ex. A ¶ 8.

Accordingly, the General Release serves as a complete bar to Plaintiff's claim, and the Complaint should be dismissed, with prejudice.

## II.     Plaintiff is Not Entitled to Declaratory Judgment.

It is axiomatic that in order to state a claim Plaintiff must allege *facts* sufficient to establish the existence of a plausible cause of action. Instead, Plaintiff's Complaint overflows with bare assertions, many made "on information and belief," and none of which amounts to well-pleaded *facts*. Plaintiff cannot fill this obvious factual gap in its pleading by alleging—again in wholly conclusory fashion—that "actual controversies exist as to SLF's interests and rights in the Trust." Compl. ¶ 54. Even apart from the General Release, this fatal deficiency by itself requires dismissal of Plaintiff's claim for declaratory judgment. *See e.g.*, *Specialty Mktg. Grp. v. Katz*, No. 13-CV-12636 (LTS), 2014 WL 2453105, at *7 (D. Mass. May 30, 2014) (dismissing declaratory judgment count based on "a conclusory recitation of the relevant factors, alleged only on 'information and belief'" as "insufficient" to support the declaration sought).

In *Hutchinson v. Bank of America, N.A.*, for example, this Court dismissed a declaratory judgment claim that "essentially ask[ed] the Court to issue a declaration that defendants have

wrongfully claimed title to [plaintiff]'s [ ] property and to restore the property to [plaintiff]'s ownership" because the complaint did "not [] contain sufficient facts to make relief on th[is] count plausible." No. 18-CV_12443 (LTS), 2019 WL 2870303, at *4 (D. Mass. July 3, 2019). Specifically, plaintiff's razor thin allegations in *Hutchinson* that defendants did not comply with the applicable foreclosure statute were not credited by this Court because they were merely "[t]hreadbare recitals of a cause of action's elements, supported by mere conclusory statements," and "[c]ontrary to those bare assertions, the specific facts alleged in [the] complaint and the documents attached thereto support" the opposite conclusion, put forth by the defendants. *Id.* at *5 (internal citations and quotation marks omitted). The Court therefore dismissed the declaratory judgment claim as a matter of law. *Id.* at *6.

Similarly here, Plaintiff relies solely on conclusory allegations that SLF has a purported beneficial interest in the Trust and asks this Court for a declaration to that effect based on nothing more than its own say-so. Yet Plaintiff concedes in the Complaint that it has no factual predicate for its belief any later than January 15, 2016—nearly two years before SLF released all claims related to the Trust. *See* Compl. ¶ 52. SLF's speculative and conclusory statement that this remained Ms. Buffett's intention at any point thereafter, including after SLF terminated her Letters Program, is afforded no factual support and therefore should not be credited by the Court. *Id*. Accordingly, Plaintiff's single count for declaratory judgment fails as a matter of law and must be dismissed, with prejudice.

Plaintiff's claim also fails under the Declaratory Judgment Act, which requires that a claim present an "actual case[s] or controvers[y]." *Ernst & Young v. Depositors Economic Protection Corp.*, 45 F.3d 530, 534-35 (1st Cir. 1995) (also noting the "substantial discretion" courts have to decide whether or not to grant declaratory judgment). In the First Circuit, there is a two-part

11

inquiry to analyze this foundational requirement: (1) whether the issue is "fit for review," and (2) whether "hardship looms." *Tocci Bldg. Corp., of New Jersey, Inc. v. Virginia Sur. Co.*, 750 F. Supp. 2d 316, 320-21 (D. Mass. 2010).  With respect to hardship, "[t]he key question involves the ***usefulness*** of a declaratory judgment, that is, the extent to which the desired declaration would be of practical assistance in setting the underlying controversy to rest." *Ernst & Young*, 45 F.3d at 537 (internal citations and quotation marks omitted) (emphasis added).  For this reason, "a court may refuse to enter declaratory judgment when it '. . . would not terminate the uncertainty or controversy giving rise to the proceedings or for other sufficient reasons.'" *In re. Dolphinite, Inc.*, 355 B.R. 391, 401-02 (Bankr. D. Mass. 2006) (quoting *Ioannou v. Merrimack Mut. Fire. Ins. Co.*, No. 995902J, 2001 WL 1809800, at *2 (Mass. Super. Ct. Dec. 20, 2001)).  If the Court chose to exercise its discretion to grant declaratory judgment here (it should not for the reasons stated herein), uncertainty nonetheless would persist—which directly contravenes the purpose of a declaration.  *See Mass. Ass'n of Indep. Ins. Agents & Brokers, Inc. v. Comm'r of Ins.*, 373 Mass. 290, 292 (Mass. 1977) (observing that if Court exercises discretion to issue declaratory judgment, there must be "an immediate impact on the rights of the parties" to ensure the effectuation of the statutory purpose of declaratory judgment "to afford relief. . . from uncertainty and insecurity with respect to rights, duties, status and other legal relations") (internal citations and quotation marks omitted).  This is clear from the face of the Complaint, whereby SLF merely seeks a declaration that it is "a" beneficiary of the Trust, (Compl. ¶ 56), which does nothing to clarify what type or amount of beneficial interest Plaintiff may or may not have.  Accordingly, Plaintiff cannot meet the standard for usefulness because "the desired declaration" would have the opposite effect—leading to additional disputes over the Trust, as opposed to "setting the underlying controversy to rest." *Ernst & Young*, 45 F.3d at 537.

Plaintiff's Complaint should be dismissed, with prejudice, for these independent reasons as well.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court dismiss Plaintiff's Complaint, with prejudice.

Respectfully submitted,

DATED:  December 8, 2020           QUINN EMANUEL URQUHART &
        Boston, Massachusetts       SULLIVAN, LLP


/s/ *Harvey J. Wolkoff*

Harvey J. Wolkoff (BBO# 532880)
Aliki Sofis (BBO# 675777)
Elizabeth M. Kelly (BBO# 703557)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
111 Huntington Avenue, Suite 520
Boston, MA 02199
Tel: (617) 712-7100
Fax: (617) 712-7200
harveywolkoff@quinnemanuel.com
alikisofis@quinnemanuel.com
elizabethkelly@quinnemanuel.com

Ryan P. McManus (BBO# 673219)
HEMENWAY & BARNES LLP
75 State Street
Boston, MA 02109
Tel.: (617) 557-9705
Fax: (617) 227-0781
rmcmanus@hembar.com


*Attorneys for Defendant Alexander Rozek as Trustee of the Doris Buffett Revocable Trust*

## LOCAL RULE 7.1 CERTIFICATION

I certify that Defendant has complied with the provisions of Local Rule 7.1 by conferring with counsel for SLF on or about December 4, 2020. The parties were unable to agree with respect to the issues raised in the Motion to Dismiss, and are thus at an impasse and require the Court's assistance to resolve the dispute.

/s/ *Aliki Sofis*
Aliki Sofis

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was filed on December 8, 2020 through the ECF System and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Dated: December 8, 2020                                            /s/ *Harvey J. Wolkoff*
                                                                                    Harvey J. Wolkoff