**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

THE SUNSHINE LADY FOUNDATION, INC.,

     *Plaintiff*,

v.

ALEXANDER ROZEK, as Trustee of the Doris
Buffett Revocable Trust,

     *Defendant*.

Civil Action No. <u>20-12146 (LTS)</u>

**ORAL ARGUMENT REQUESTED**

<u>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**</u>

# TABLE OF CONTENTS

BRIEF FACTUAL BACKGROUND.......................................................................................... 2

ARGUMENT ...................................................................................................................... 5

   I.    The Facts Alleged In The Complaint Satisfy The Standard Applicable To A Motion To Dismiss................................................................................................................... 5

   II.   This Action Is Not Barred By The Settlement And Release. ........................................ 8

       A.    *The Settlement and Release Does Not Waive "Future" Claims.* ...................... 9

       B.    *The Complaint Involves "Future" Claims That Had Not Yet Accrued as of the Date of the Settlement and Release.* ............................................................. 11

   III.  SLF Did Not Disclaim Its Beneficial Interest In The Trust Through The Settlement And Release. ...................................................................................................... 14

   IV.  SLF Is Entitled To Declaratory Relief. .................................................................. 15

CONCLUSION................................................................................................................... 17

# TABLE OF AUTHORITIES

**Cases**

*Armstrong v. Rohm & Haas Co., Inc.*,
349 F. Supp. 2d 71 (D. Mass. 2004) ...................................................................... 11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................................. 5

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................................. 5

*Dodson v. Maroney*,
15 Mass. App. Ct. 982 (1983) ................................................................................ 12

*Heinrich v. Silvernail*,
23 Mass. App. Ct. 218 (1986) ................................................................................ 13

*Kane v. Moore*,
No. 17-CVS-13761, 2018 WL 6183317 (N.C. Super. Nov. 26, 2018) ................... 12

*Labonte v. Giordano*,
426 Mass. 319 (1997) ............................................................................................ 13

*Laudani v. Wells Fargo, N.A.*,
506 B.R. 19 (Bankr. D. Mass. 2014) ..................................................................... 10

*Maimonides Sch. v. Coles*,
71 Mass. App. Ct. 240 (2008) ............................................................................... 12

*Menard v. CSX Transp., Inc.*,
698 F.3d 40 (1st Cir. 2012) .............................................................................. 16, 17

*Neill v. Brackett*,
234 Mass. 367 (1920) ............................................................................................ 13

*Pruell v. Caritas Christi*,
678 F.3d 10 (1st Cir. 2012) .................................................................................... 16

*Sedberry v. Johnson*,
62 N.C. App. 425 (1983) ....................................................................................... 15

*Travis v. Knob Creek, Inc.*,
321 N.C. 279 (1987) ........................................................................................... 9, 12

*United States ex rel. Hutcheson v. Blackstone Medical, Inc.*,
647 F.3d 377 (1st Cir. 2011) .................................................................................... 5

*Watterson v. Page*,
987 F.2d 1 (1st Cir. 1993) ........................................................................................ 2

*Wilson v. Estate of Arcese*,
No. 0701461, 2007 WL 2429607 (Mass. Super. Aug. 9, 2007) ............................ 12

**Rules**

Fed. R. Civ. P. 12(b)(6)................................................................................................ 5

**Statutes**

M.G.L. c. 190B, § 2-801 (d) (2019)........................................................................... 15

N.C. Gen. Stat. §§ 31B-1(c) (2020) .......................................................................... 15

Va. Code Ann. § 64.2-2603 (2020)............................................................................ 14

Plaintiff The Sunshine Lady Foundation, Inc. ("SLF") submits this Opposition to the Motion to Dismiss the Complaint ("MTD") filed by Defendant Alexander Rozek, as Trustee of the Doris Buffett Revocable Trust (the "Trust").

As discussed further below, the MTD should be denied for three main reasons:

First, the MTD ignores the well-pleaded facts in the Complaint and ignores the applicable standard of review, which mandates that all well-pleaded facts must be accepted as true.  Under this standard, SLF's allegation that it was a named beneficiary of the Trust and would remain so to continue Doris Buffett's charitable work after her death—an allegation that is based on Ms. Buffett's own stated intent and documentary evidence—must be accepted as true.

Second, the MTD argues in a general way that SLF's claim to a beneficial interest in the Trust is barred by the Settlement and Release, but fails to explain how.  For example, the MTD does not argue that the Trust was amended to remove SLF as a named beneficiary *prior* to the execution of the Settlement and Release.  Moreover, the MTD does not argue that the language of the release would bar a claim that accrues in the *future* or that concerns SLF's removal as a named beneficiary *after* the execution of the Settlement and Release.  Strikingly, the MTD does not even assert that the Trust was *ever* amended to remove SLF as a named beneficiary, thereby highlighting the question of whether SLF is still named as a beneficiary.  By definition, if SLF is still named as a beneficiary, then SLF *is* a beneficiary of the Trust, with its beneficial rights and interest spelled out by the terms of the Trust.  This would explain why Mr. Rozek has so forcefully withheld copies of the trust documents from SLF.

Third, to the extent Mr. Rozek is arguing that SLF somehow disclaimed its beneficial rights and interest through the Settlement and Release itself, that argument would be incorrect as a matter law.  A release is not the same as a disclaimer.  The general language of the Settlement

and Release does not satisfy the very specific statutory requirements of a disclaimer.

SLF is entitled to the declaratory relief it seeks, and it is entitled to the documents and information that Mr. Rozek has been withholding.  SLF feels an obligation to pursue these remedies to honor Ms. Buffett's long-time wishes and on behalf of the disadvantaged individuals whom it has always served.

## BRIEF FACTUAL BACKGROUND

The facts relevant to the MTD are laid out in the Complaint, as alleged in the Complaint, and not as the MTD tries to spin them.  The basic overview is as follows:

1.     Ms. Buffett created the Trust on November 2, 1996.  That same year, she founded SLF for the purpose of redistributing her wealth to disadvantaged individuals.  Compl. ¶¶ 5–6.

2.     Three of Ms. Buffett's closest friends—Anne "Mitty" Ewing Beal, Diane Grimsley, and Rebecca Currie—were involved with Ms. Buffett in SLF from its start, and they continue to serve on SLF's Board of Directors.  *Id.* at ¶ 7.  Ms. Buffett relied heavily upon her close friends—not her family, from whom she was estranged (either consistently or periodically) over many decades—to help formulate and execute her charitable goals.  *Id.* at ¶ 16.

3.     Ms. Buffett named SLF as the primary beneficiary of the Trust in order to continue her charitable work after her death in the event that she was unable to give away all of her money during her lifetime, and she named Mitty Beal as successor trustee of the Trust.  *Id.* at ¶¶ 12–16.

4.     On October 4, 2012, Mr. Rozek—who is Ms. Buffett's grandson—became her attorney-in-fact pursuant to a General Power of Attorney.  *Id.* at ¶ 17; *see* Harris Dec. at Ex. A.[1]

---

[1] The documents attached to the Declaration of Rebecca Harris may be considered in connection with the MTD because they are sufficiently referenced in the Complaint and their authenticity should not be disputed.  *See Watterson v. Page*, 987 F.2d 1, 3–4 (1st Cir. 1993).

5.     In 2015, as Ms. Buffett's health deteriorated, Mr. Rozek relocated her to Boston, and he took control of her financial, medical, and legal decisions.  *Id.* at ¶ 18.

6.     Thereafter, as Ms. Buffett's health continued to deteriorate, and as her dementia continued to advance, Mr. Rozek isolated her from her close friends at SLF.  *Id.* at ¶¶ 19–21, 24–25.  On September 1, 2016, shortly after she had been admitted to McLean Hospital for a psychiatric episode, all contact between Ms. Buffett and her close friends at SLF was cut off permanently by Mr. Rozek.  *Id.* at ¶¶ 27–28.

7.     By that time, Mr. Rozek had already begun unilaterally moving the Warren's Letters program to Boston, including by arranging an interview by the *Boston Globe* to announce the move to Boston, and by transferring all of the letters from individuals received over the prior 10-year period from a locked storage unit in Rockport, Maine to Boston in early September 2016; he did so in both cases without permission from SLF and without notice to SLF.[2]  *Id.* at ¶¶ 22–23, 26, 29.

8.     Then, in October 2016, a law firm in Boston that Mr. Rozek had engaged, purportedly to represent him and Ms. Buffett jointly, demanded an "in-depth investigatory audit" of SLF because of Mr. Rozek's alleged concerns about financial controls and self-dealing.  *Id.* at ¶¶ 34, 36.

9.     The results of this investigatory audit were never shared with SLF, but a separate independent audit proved Mr. Rozek's allegations to be unfounded.  *Id.* at ¶¶ 36–37.

10.     The tension between Mr. Rozek and SLF increased, leading to the Settlement and Release dated December 11, 2017.  The purpose of this agreement was to memorialize Ms.

---

[2] SLF denies the MTD's characterization of the discontinuation of the Warren's Letters program, and also denies the allegations that Ms. Buffett's close friends at SLF engaged in "duplicitous" activities and took steps to remove her from SLF's Board of Directors.  These false allegations are not at issue in the MTD, but SLF nevertheless feels compelled to defend itself against Mr. Rozek's bully-tactics and set the record straight.

Buffett's and Mr. Rozek's resignations from SLF's Board of Directors, and to memorialize the transition of the Warren's Letters program from SLF to the new charitable entity that Mr. Rozek had created in Boston—the Sunshine Lady Humanitarian Grants Program, Inc. *Id.* at ¶¶ 42–43.

11.    Mr. Rozek signed the Settlement and Release on Ms. Buffett's behalf as her attorney-in-fact under the General Power of Attorney.  As of December 2017, Ms. Buffett was not competent to sign for herself.  *Id.* at ¶ 44.

12.    Ms. Buffett passed away on August 4, 2020.  *Id.* at ¶ 48.

13.    In response to SLF's inquiry about its beneficial interest in the Trust, the Boston law firm that had jointly represented Mr. Rozek and Ms. Buffett informed SLF that it was not a beneficiary of the Trust and that Mitty Beal was not a successor trustee of the Trust.  *Id.* at ¶ 49. SLF's request for further information—including copies of the trust documents—was denied, and the individual "non-family" members of SLF's Board of Directors were threatened with claims of personal liability and damages—on the basis of the Settlement and Release—if SLF were to pursue its interest in the Trust.  *Id.* at ¶ 50.

14.    Moreover, despite the fact that Ms. Buffett's Last Will and Testament names Mitty Beal as a co-personal representative of her estate, Ms. Beal was threatened with still more litigation if she were to seek her appointment as co-personal representative.  Mr. Rozek insisted on being the sole personal representative of the estate, even though that was not what Ms. Buffett had wanted.[3]  *Id.* at ¶ 51.

15.    SLF filed this action on November 4, 2020.

---

[3] The fact that Ms. Buffett did not change her Last Will and Testament to remove Mitty Beal as a named co-personal representative of her estate suggests that Ms. Buffett did not actually amend the Trust to remove SLF as a named beneficiary or Ms. Beal as a successor trustee.  It would have been inconsistent for Ms. Buffett to remove SLF and Ms. Beal from the Trust while keeping Ms. Beal as co-personal representative of the estate.

## ARGUMENT

### I.   The Facts Alleged In The Complaint Satisfy The Standard Applicable To A Motion To Dismiss.

When considering a motion to dismiss, a court must accept as true all well-pleaded facts in a complaint, "analyzing those facts in the light most hospitable to the plaintiff's theory, and drawing all reasonable inferences for the plaintiff." *See United States ex rel. Hutcheson v. Blackstone Medical, Inc.*, 647 F.3d 377, 383 (1st Cir. 2011).  In conflict with this standard, the MTD ignores certain facts alleged in the Complaint and suggests that others should trigger inferences favorable to Mr. Rozek.

Under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 550 (2007)).  A claim is facially plausible only if the pleaded facts permit a court to reasonably infer that the plaintiff is entitled to relief.  *Id*.  "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  Here, the Complaint contains more than sufficient "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery[,]" *see Hutcheson*, 647 F.3d at 384 (internal quotation marks omitted), particularly when viewed in light of Mr. Rozek's isolation of Ms. Buffett from her close friends and fellow Board members at SLF during the last years of her life, and his withholding of information—including the trust documents themselves—from SLF since Ms. Buffett's death.

Specifically, the Complaint alleges that Ms. Buffett intended for whatever money that remained upon her death to go to SLF to continue her charitable work.  Compl. ¶ 12.  For that purpose, Ms. Buffett named SLF as the primary beneficiary of the Trust after her death.  *Id.* at ¶

5

13.  On December 1, 2014, Ms. Buffett confirmed to her estate-planning lawyer that SLF was to receive the bulk of her remaining assets after her death.  *Id.* at ¶ 14.  Ms. Buffett later signed a Tenth Amendment to the Trust, under which SLF continued to be named as the primary beneficiary of the Trust after her death.  *Id.* at ¶ 15.  Over the years, Ms. Buffett repeatedly told Mitty Beal, Diane Grimsley, Rebecca Currie, and many others that SLF was and would be the primary beneficiary of the Trust after her death, and that she wanted her charitable work to be completed after her death through SLF.  *Id.* at ¶ 16.

These allegations must be accepted as true, with all inferences drawn in SLF's favor. Contrary to what Mr. Rozek argues in the MTD at page 11, they are not "conclusory allegations" and they are not "based on nothing more than its [SLF's] own say-so."  Indeed, in addition to being based on what Ms. Buffett herself had repeatedly said, these allegations are based on documents, including a document memorializing Ms. Buffett's discussion with her estate-planning lawyer on December 1, 2014, as referenced in paragraph 14 of the Complaint.  That document, which was created by Ms. Buffett's assistant, revised by Ms. Buffett's estate-planning lawyer, and shared with both Mr. Rozek and Mitty Beal, confirms SLF's status as a named beneficiary of the Trust.

It provides in part as follows:

**Estate-Trust**

- Estate- Gift to SLF- <u>As currently stated the remainder of the trust will be given to SLF</u>.  Since SLF is a non-profit it is exempt from death taxes.  There is no benefit to gifting the foundation prior to death.

Harris Dec. at Ex. B (emphasis added).

The Complaint further alleges that at the time of an article published in *The Boston Globe* on May 5, 2018—*i.e.*, five months after the execution of the Settlement and Release—SLF had

not been informed of being removed as the primary beneficiary of the Trust after Ms. Buffett's death, and Mitty Beal had not been informed of being removed as a successor trustee of the Trust.  Compl. ¶ 47.  Indeed, the article reported that Ms. Beal was a co-trustee with Mr. Rozek. *Id.*  The reasonable inference to be drawn from these allegations is that as of May 2018, some five months after the Settlement and Release, SLF continued to be named as a beneficiary of the Trust and Ms. Beal continued to be named as a successor trustee of the Trust.  This inference is reinforced by the fact that Ms. Beal continues—to this day—to be a named as a co-personal representative of Ms. Buffett's estate pursuant to her Last Will and Testament.  *Id.* at ¶ 51.

Moreover, the reasonable inference to be drawn from the allegations regarding Ms. Buffett's dementia and deteriorating health is that, following her relocation to Boston in 2015, she became incapable of amending the Trust to remove SLF as a named beneficiary. Specifically, the Complaint alleges that Ms. Buffett suffered from advanced dementia and began treatment at the Center for Alzheimer Research and Treatment at Brigham & Women's Hospital in April 2016.  *Id.* at ¶ 19.  The Complaint includes specific examples of Ms. Buffett's disorientation and confusion as reported by her personal assistant in July 2016.  *Id.* at ¶¶ 20–21. Thereafter, Ms. Buffett became increasingly agitated and continued to deteriorate, and she was admitted to McLean Hospital for a psychiatric episode on August 30, 2016.  *Id.* at ¶¶ 24–25, 27. In fact, in December 2017, Mr. Rozek had to sign the Settlement and Release on Ms. Buffett's behalf because she was not competent to sign for herself.  *Id.* at ¶ 44.

Ms. Buffett's alleged incapacity was confirmed by the May 2018 article in *The Boston Globe*, where it was reported that Ms. Buffett suffered from "advanced Alzheimer's disease" since being relocated to Boston three years earlier in 2015, that she had "severe dementia," and that, according to a caretaker, it would have been "hard for her to put a sentence together" as of

May 2018.  *Id.* at ¶ 46.  Again, these allegations, as well as the allegations of Mr. Rozek's

isolation and control of Ms. Buffett, *see id.* at ¶¶ 18, 25, 28, 34, 38, 40, 45, and all reasonable

inferences to be drawn therefrom, must be accepted as true.

In sum, when taken together, the facts alleged in the Complaint establish—at least for

purposes of the MTD—that Ms. Buffett named SLF as the primary beneficiary of the Trust after

her death, and that SLF continued to be so named as of May 2018, some five months after the

execution of the Settlement and Release.  Moreover, to the extent the Trust was subsequently

amended to remove SLF as a named beneficiary, any such purported amendment would be

invalid because Ms. Buffett lacked testamentary capacity or because the amendment was the

result of undue influence or tortious interference with expectancy.  This is exactly the declaratory

relief that SLF seeks in the Complaint.  *See id.* at ¶ 55.

## II.   <u>This Action Is Not Barred By The Settlement And Release.</u>

The Settlement and Release is governed by the laws of North Carolina, and therefore the

scope of the release language must be construed according to the laws of North Carolina.  The

release language applies to the following types of claims:

> … any and all claims, rights, demands, debts, commissions, accountings, contracts,
> controversies, agreements, fees, expenses, costs, liabilities, actions, or causes of
> action, whether known or unknown, asserted or unasserted, liquidated or
> unliquidated, fixed or contingent, or of any nature whatsoever, which the SLHGP
> Parties ever had or now have, arising out of any act, transaction, event, or
> occurrence from the beginning of time through the date hereof (including existing
> but unknown claims).

Sofis Dec. at Ex. A, p. 3.

Mr. Rozek maintains that this action is barred by the release language, but he has been

careful not to disclose whether the Trust was actually amended to remove SLF as a named

beneficiary—and if so, when.  According to the factual allegations in the Complaint, however,

which must be accepted as true, to the extent the Trust was actually amended, the amendment

must have been made sometime between May 5, 2018 (the date of the article in *The Boston Globe*) and Ms. Buffett's date of death on August 4, 2020.

In other words, any such amendment must have been made *after* the execution of the Settlement and Release. This is obviously significant, because the language of the release does not purport to waive "future" claims—*i.e.*, claims based on an "act, transaction, event, or occurrence" after the date of the Settlement and Release, or claims that had not yet accrued and therefore did not yet exist as of the date of the Settlement and Release.[4]

### A. *The Settlement and Release Does Not Waive "Future" Claims.*

Under North Carolina law, future claims are not among the kinds of claims that are waived by default in a general release:

> A release ordinarily operates on the matters expressed therein which are already in existence at the time of the giving of the release. Accordingly, demands originating at the time a release is given or subsequently, and *demands subsequently maturing or accruing, are not as a rule discharged by the release unless expressly embraced therein or falling within the fair import of the terms employed.*

*Travis v. Knob Creek, Inc.*, 321 N.C. 279, 282 (1987) (quoting 76 C.J.S. Release § 53 (1952)) (alterations in original).

In *Travis v. Knob Creek, Inc.*, the plaintiff was an employee, stockholder, and officer of Knob Creek, Inc., a furniture manufacturer that was sold to Ethan Allen, Inc. within a month after the plaintiff's signing a ten-year employment contract. In connection with the sale, the plaintiff signed a release that provided the following: "[T]he said officer doth hereby release and forever discharge Knob Creek ... from all claims, demands, actions, causes of action, on account of, connected with, or growing out of any matter or thing whatsoever." 321 N.C. at 281. Five

---

[4] Discovery will show that the initial draft of the release language from Mr. Rozek's counsel included "future" claims, but the reference to "future" claims was excluded from the final version of the release through the negotiation process.

years later, when the plaintiff was terminated from his employment, he sued for breach of the

ten-year employment contract.  *Id.*  The defendants argued that this claim was barred by the

release.  *Id.*  The Supreme Court of North Carolina disagreed, holding that the release was

unambiguous and did not apply to future claims:

> His "claim" did not arise until over four years after the date of the release.  The
> release did not specifically include future claims or existing non-asserted rights,
> and it did not contain any language implying that such claims or rights were being
> released.  As a matter of law, the release here could not bar the plaintiff's claim or
> his right to work under the terms of the employment contract, because the release
> did not specifically refer to future claims or existing rights.

*Id.* at 283.

Likewise, here, the language of the Settlement and Release does not specifically include a

waiver of future claims or existing non-asserted rights.  Therefore, as a matter of North Carolina

law, this action is not barred by the Settlement and Release.

The outcome would be the same under Massachusetts law.  In *Laudani v. Wells Fargo,

N.A.*, 506 B.R. 19, 27 (Bankr. D. Mass. 2014), the Court addressed a release that was signed as

part of a loan modification agreement between a debtor and mortgage lender.  The language of

the release provided that the debtor, in exchange for the loan modification, "hereby RELEASES,

RELINQUISHES and forever DISCHARGES Lender … of and from any and all claims,

demands, actions and causes of action of any and every kind of character, whether known or

unknown, present or future, which [debtor] may have against Lender, … arising out of or with

respect to any and all transactions relating to the Note and Security Instrument occurring prior to

the date hereof …."  *Id.*  The Court held that this language was not an open-ended release of

future claims, because it related only to actions and events that transpired prior to the making of

the contract.  *Id.*

Similarly, in *Armstrong v. Rohm & Haas Co., Inc.*, 349 F. Supp. 2d 71, 74 (D. Mass. 2004), the release applied to claims "from the beginning of time until the present, arising out of or in any manner relating to all events and circumstances in any way related to plaintiffs' employment … or the separation of that employment." The Court held that this release "does not, by its express terms, release future claims, *i.e.*, those that had not yet accrued." *Id.* at 76.

For the same reasons, the Settlement and Release does not release future claims based on events that had not yet occurred as of the date of the agreement, and the Settlement and Release does not release future claims that had not yet accrued at the time of its execution.

## B. *The Complaint Involves "Future" Claims That Had Not Yet Accrued as of the Date of the Settlement and Release.*

In the single count of the Complaint, SLF seeks a declaration that to the extent the Trust was amended to remove SLF as a named beneficiary, the amendment was legally ineffective because Ms. Buffett lacked testamentary capacity, or because the amendment was the result of undue influence or tortious interference with expectancy. The references to testamentary capacity, undue influence, and interference with expectancy were placeholders. SLF did not know at the time of filing—and still does not know—that the Trust was actually amended to remove SLF as a named beneficiary. Therefore, in order to avoid overstepping, SLF did not claim that Ms. Buffett lacked testamentary capacity or that Mr. Rozek had unduly influenced her or interfered with SLF's expectancy. SLF did, however, reserve its right to amend the Complaint after reviewing the documents and information that Mr. Rozek has been withholding from SLF. *See* Compl. ¶ 50, n.1 ("SLF reserves the right to amend the Complaint based on documents and information that SLF may receive through the litigation of this action.").

SLF's prospective claims for lack of testamentary capacity, undue influence, and interference with expectancy could not have accrued until Ms. Buffett's death in August 2020.

Hence, under North Carolina law, which governs the Settlement and Release, those claims could not have been waived in the Settlement and Release in December 2017.  *See Kane v. Moore*, No. 17-CVS-13761, 2018 WL 6183317, at *8 (N.C. Super. Nov. 26, 2018) ("[A] release generally bars only those claims in existence at the time it is executed, and not claims accruing after the execution of the release.") (citing *Travis*, 321 N.C. at 282).

Specifically, a claim for lack of testamentary capacity was not ripe for adjudication and could not accrue until Ms. Buffett's death, because testamentary capacity is fluid and can come and go.  "A person may possess testamentary capacity at any given time and lack it at all other times." *Maimonides Sch. v. Coles*, 71 Mass. App. Ct. 240, 252 (2008) (citations omitted). Therefore, at least in theory, depending on the degree of her dementia, Ms. Buffett could have enjoyed a so-called "moment of lucidity" to revoke a prior amendment to the Trust that purported to remove SLF as a named beneficiary.  Because the Trust was a revocable trust, it theoretically could have been amended by Ms. Buffett at any time during her lifetime.  Typically a revocable trust does not become irrevocable until the settlor's death,

Similarly, a claim for undue influence was not ripe for adjudication and could not accrue until Ms. Buffett's death.  *See Wilson v. Estate of Arcese*, No. 0701461, 2007 WL 2429607 at *4 (Mass. Super. Aug. 9, 2007) (finding that a claim for undue influence was premature where the will had not been admitted to probate); *see also Dodson v. Maroney*, 15 Mass. App. Ct. 982, 983 (1983) ("[T]he normal procedure for attacking a will on the grounds of undue influence or lack of testamentary capacity is to oppose the allowance of a will after it has been offered for probate.").

The basic elements of a claim for undue influence are an "(1) unnatural disposition … made (2) by a person susceptible to undue influence to the advantage of someone (3) with an

opportunity to exercise undue influence and (4) who in fact has used that opportunity to procure the contested disposition through improper means." *Heinrich v. Silvernail*, 23 Mass. App. Ct. 218, 223 (1986).  "[U]ndue influence … may arise from persistent and unrelaxing efforts in the establishment or maintenance of conditions intolerable to the particular individual." *Neill v. Brackett*, 234 Mass. 367, 369 (1920).  Here, the unnatural disposition of removing SLF as a named beneficiary of the Trust could not be complete, and Mr. Rozek as an alleged undue influencer could not complete his procurement of this unnatural disposition through persistent and unrelaxing efforts, until Ms. Buffett's death.  This is because, again at least in theory, Ms. Buffett could have overcome the undue influence sometime prior to her death, perhaps with the assistance of truly independent counsel who did not represent Mr. Rozek, too.[5]

Likewise, a claim for tortious interference with expectancy, which involves interference with the expectancy of receiving a legally protected interest in a gift, was not ripe for adjudication and could not accrue until Ms. Buffett's death.  In *Labonte v. Giordano*, 426 Mass. 319, 321 (1997), the Supreme Judicial Court of Massachusetts rejected a claim for interference with expectancy that was asserted while the donor was still alive.  "[A] cause of action cannot arise for tortious interference with the expectancy of receiving a legacy until the donor's death, because any such expectancy would only be realized at that time." *Id.*

In short, the prospective claims for lack of testamentary capacity, undue influence, and interference with expectancy did not exist as of the date of the Settlement and Release.  They were "future" claims that fell outside the scope of the release language.

---

[5] As alleged in the Complaint, Ms. Buffett did not have her own independent counsel.  When she was relocated to Boston, she and Mr. Rozek became jointly represented by the same Boston law firm.  *See* Compl. ¶ 34.

### III.   <u>SLF Did Not Disclaim Its Beneficial Interest In The Trust Through The Settlement And Release.</u>

The MTD does not specify when the Trust was amended to remove SLF as a named beneficiary, or even allege that the Trust was ever actually amended to remove SLF as a named beneficiary.  To the extent the Trust was never actually amended, and instead Mr. Rozek is suggesting that SLF somehow disclaimed its beneficial interest in the Trust through the Settlement and Release itself, he would be incorrect as a matter of law.  The language in the release does not constitute a valid disclaimer of SLF's beneficial interest in the Trust.

Because the trust documents have been withheld from SLF, it does not know which state's law governs the Trust.  The Trust may be governed by Virginia law, where Ms. Buffett's estate-planning lawyer was located, *see* Compl. ¶ 14.  Indeed, the General Power of Attorney dated October 4, 2012, which is referenced in paragraph 17 of the Complaint, and which was drafted by Ms. Buffett's estate-planning lawyer in Virginia, was drafted pursuant to Virginia law.  *See* Harris Dec. at Ex. A.  Alternately, the Trust may be governed by North Carolina law, which is the law that governs the Settlement and Release.  Or perhaps the Trust is governed by Massachusetts law, where the Trust has been administered by Mr. Rozek as trustee.  Regardless of which state's law might govern, however, the result would be the same.

Under Virginia law, "[t]o be effective, a disclaimer shall be in writing or other record, declare the disclaimer, describe the interest or power disclaimed, be signed by the person making the disclaimer, and be delivered or filed in the manner provided in § 64.2-2610."  Va. Code Ann. § 64.2-2603 (2020).

Under North Carolina law, a beneficial interest can be disclaimed in an instrument of renunciation.  "The instrument of renunciation shall (i) identify the transferor of the property or interest in the property or the creator of the power or the holder of the power, (ii) describe the

property or interest renounced, (iii) declare the renunciation and extent thereof, and (iv) be signed and acknowledged by the person renouncing."  N.C. Gen. Stat. §§ 31B-1(c) (2020) ; *see* *Sedberry v. Johnson*, 62 N.C. App. 425, 430 (1983) (holding that language in separation agreement constituted a renunciation of interest in a will where the language stated unambiguously that the intent of the parties to the agreement was "to waive and renounce 'all rights ... under any previously executed Will of the other.'").

Under Massachusetts law, "[a] disclaimer shall be in writing, shall describe the interest in property being disclaimed, shall declare the disclaimer and the extent thereof, shall be clear and unequivocal, and shall be signed by the beneficiary …."  M.G.L. c. 190B, § 2-801 (d) (2019).

The Settlement and Release does not satisfy these consistent requirements among the various states, because it does not describe any interest being disclaimed, and it does not declare the disclaimer and the extent thereof.  In fact, the Trust is not referenced anywhere in the Settlement and Release, and neither is SLF's beneficial interest in the Trust.  Simply put, the Settlement and Release did not concern the Trust or SLF's beneficial interest in the Trust.

### IV.     SLF Is Entitled To Declaratory Relief.

The MTD argues that SLF is not entitled to declaratory relief because "Plaintiff's Complaint overflows with bare assertions, made 'on information and belief,' and none of which amounts to well-pleaded *facts*."  MTD, p. 10 (emphasis in original).  This rhetoric is misplaced.[6] The MTD mischaracterizes the Complaint, which contains detailed factual allegations, including those discussed *supra* in Section I.

While it is true that the Complaint pleads some facts "on information and belief," the use

---

[6] The Complaint contains 56 numbered paragraphs over thirteen pages.  The phrase "on information and belief" can be found in just six of those paragraphs.

of this phrase "does not mean pure speculation," but rather it signifies that the allegations are based on secondhand information that SLF believes to be true. *See Menard v. CSX Transp., Inc.*, 698 F.3d 40, 45 (1st Cir. 2012) (internal citations omitted). Additionally, "'some latitude' may be appropriate where a plausible claim may be indicated 'based on what is known,' at least where, as here, 'some of the information needed may be in the control of [the] defendant[].'" *Id.* (citing *Pruell v. Caritas Christi*, 678 F.3d 10, 15 (1st Cir. 2012), *cert. denied*, ––– U.S. –––, 132 S.Ct. 1969, 182 L.Ed.2d 818 (2012)) (internal quotation marks omitted).

Next, the MTD argues that the Complaint fails under the Declaratory Judgment Act because a declaration that SLF is a beneficiary of the Trust would not be "useful." [7] MTD, p. 12 ("If the Court chose to exercise its discretion to grant declaratory judgment here …, uncertainty nonetheless would persist …. This is clear from the face of the Complaint, whereby SLF merely seeks a declaration that it is 'a' beneficiary of the Trust (Compl. ¶ 56), which does nothing to clarify what type or amount of beneficial interest Plaintiff may or may not have."). This is a baseless argument. If SLF is a beneficiary of the Trust, then the type and amount and other specifics of SLF's beneficial rights and interest in the Trust will be detailed in the trust documents—*i.e.*, the very same documents that Mr. Rozek is withholding from SLF, despite his fiduciary duty as trustee to act in the best interests of the beneficiaries and to account to the beneficiaries.[8]

At bottom, the Complaint pleads sufficient facts entitling SLF to obtain the trust documents through discovery in order to determine as a threshold matter whether it was actually removed as a named beneficiary of the Trust, and if so, when and under what circumstances. *See*

---

[7] The disadvantaged individuals whom SLF has always served would likely disagree that additional funding for SLF and a continuation of its charitable work would not be useful.

[8] Whether Mr. Rozek has breached his fiduciary duty may be a question for another day.

*Menard*, 698 F.3d at 45 ("Where modest discovery may provide the missing link, the district court has discretion to allow limited discovery and, if justified, a final amendment of the complaint.").  To this end, SLF already served Mr. Rozek with an initial set of limited document requests on November 19, 2020.

## **CONCLUSION**

For the foregoing reasons, The Sunshine Lady Foundation, Inc. respectfully requests that this Court deny the MTD, or alternatively grant leave to SLF to conduct limited discovery and amend the Complaint, and grant such other and further relief as is deemed just and appropriate under the circumstances.

Respectfully submitted,

THE SUNSHINE LADY FOUNDATION, INC.

By its counsel,


/s/ *Mark E. Swirbalus*
Mark E. Swirbalus (BBO No. 631650)
Rebecca Harris (BBO No. 699598)
GOULSTON & STORRS PC
400 Atlantic Avenue
Boston, Massachusetts 02110
(617) 482-1776
mswirbalus@goulstonstorrs.com
rharris@goulstonstorrs.com


Dated:  December 22, 2020




## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was filed on December 8, 2020 through the ECF System and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Dated: December 22, 2020                                      /s/ *Rebecca Harris*
                                                                           Rebecca Harris