UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE SUNSHINE LADY FOUNDATION, INC., <br><br>*Plaintiff*, <br><br>v. <br><br>ALEXANDER ROZEK, as Trustee of the Doris Buffett Revocable Trust, <br><br>*Defendant*. | Civil Action No. 20-12146 (LTS) <br><br>**ORAL ARGUMENT REQUESTED** <br><br>**LEAVE TO FILE GRANTED** <br><br>on January 12, 2021 |

**PLAINTIFF'S SUR-REPLY IN FURTHER OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS**

Plaintiff The Sunshine Lady Foundation, Inc. ("SLF") respectfully submits this Sur-Reply to address points raised by Defendant Alexander Rozek in his Reply brief (ECF Dkt No. 16):

1.  The trust amendments that Mr. Rozek filed as exhibits with his Reply brief are stunning. They reveal that it was *Mr. Rozek*—rather than Doris Buffett—who amended the Doris Buffett Revocable Trust (the "Trust") to make *himself* the sole successor trustee of the Trust and to divert the remainder beneficial interest in the Trust away from Ms. Buffett's charitable foundation (SLF) and to *his own* charitable foundation. They also seem to reveal that it was *his* and *his charitable foundation's* legal counsel who prepared the amendments and oversaw their execution by him. Ms. Buffett did not have her own independent legal counsel. She apparently was not involved. Mr. Rozek used Ms. Buffett's incompetency as an opportunity to subvert her long-time intent for his own direct or indirect benefit.

2.       Because Mr. Rozek was acting as Ms. Buffett's fiduciary in executing the trust amendments, he bears the burden of proving that he did not abuse his fiduciary relationship with her in so doing. "The burden shifts … when a fiduciary benefits from a transaction with his principal." *Cleary v. Cleary*, 427 Mass. 286, 290 (1998) (burden shifted to attorney-in-fact who assisted decedent in changing her annuity policies to name himself as the beneficiary). "And more broadly, '[t]he general rule is that one acting in a fiduciary capacity for another has the burden of proving that a transaction with himself was advantageous to the person for whom he was acting.' … This burden is generally met if the fiduciary shows that his principal made the bequest with full knowledge and intent, … or with the advice of independent legal counsel." *Id.* at 291 (internal citations omitted). Here, Mr. Rozek cannot meet his burden. The trust amendments were not advantageous to Ms. Buffett, who did not have any knowledge of them (due to her advanced dementia), and Ms. Buffett did not have her own independent legal counsel to protect her interests.

3.       In *Rempelakis v. Russell*, 65 Mass. App. Ct. 557, 563 (2006), the Massachusetts Appeals Court held that the *Cleary* burden-shifting rule applies where the fiduciary participates in the transaction from which the fiduciary benefits. Mr. Rozek did not merely participate—he himself is the person who executed the trust amendments.

4.       Mr. Rozek purportedly executed the amendments as Ms. Buffett's attorney-in-fact pursuant to a General Power of Attorney. Beyond the questions of self-dealing and invalidity referenced above, a more fundamental question exists as to whether Mr. Rozek possessed any power as attorney-in-fact to amend the Trust. Section 602 of the Massachusetts Uniform Trust Code ("MUTC"), pertaining to the revocation or amendment of revocable trusts, provides that "[a] settlor's powers with respect to revocation, amendment or distribution of trust property may

be exercised by an agent under a power of attorney only to the extent *expressly authorized by the terms of the trust and the power*." G.L. c. 203E, § 602(3)(e) (emphasis added).  Mr. Rozek is still withholding the complete terms of the Trust from SLF.

5. The newly revealed facts give rise to claims for lack of testamentary capacity, undue influence, and tortious interference with expectancy.  SLF intends to file a motion for leave to amend the Complaint.  By necessity, the Amended Complaint would name Mr. Rozek individually and the Office of the Massachusetts Attorney General, Public Charities Division, as additional defendants.

6. The claims for lack of testamentary capacity, undue influence, and tortious interference with expectancy could not have been brought by SLF during Ms. Buffett's lifetime.  Therefore, they are not barred by the release language in the Settlement and Release Agreement, which does not apply to "future" claims.  Mr. Rozek does not dispute—nor could he—that "future" claims were specifically negotiated out of the release language.

7. Mr. Rozek argues in his reply brief (p. 4, n.5) that "Plaintiff has cited no applicable law establishing that a claim challenging an amendment to the Trust could not have been brought during Ms. Buffett's lifetime.  Instead, SLF relies on several inapposite cases that arise in the context of a *will*."  (Emphasis in original.)  This argument overlooks the MUTC.  Section 112 of the MUTC provides that "[t]he rules of construction that apply in the commonwealth to the interpretation of and disposition of property by will shall also apply, as appropriate, to the interpretation of the terms of a revocable trust and the disposition of trust property." G.L. c. 203E, § 112.  Indeed, the Comment to Section 112 explains that revocable trusts are "defined as trusts intended to be will substitutes."  Moreover, Section 604 of the

MUTC "provides a time limit for contesting the validity of a revocable trust *after the settlor's death*." G.L. c. 203E, § 604, Comment (emphasis added).[1]

8. In *Labonte v. Giordano*, 426 Mass. 319, 321 (1997), the Massachusetts Supreme Judicial Court held that "a cause of action cannot arise for tortious interference with the expectancy of receiving a legacy until the donor's death, because any such expectancy would only be realized at that time." Although *Labonte* involved an expectancy under a will, claims for interference with expectancy are not limited to wills. To this point, the recent decision in *O'Regan v. Migell*, 90 Mass. App. Ct. 1114, 2016 WL 6472386 at *3 (2016) (unpublished) involved the transfer of a beneficial interest in a trust: "[Defendant's] manner of interference was unlawful … in that he exercised undue influence in obtaining the transfer to himself of the beneficial interest in the trust."

9. Finally, Mr. Rozek continues to ignore the standard applicable to a motion to dismiss by making factual arguments that are contrary to the facts alleged in the Complaint, which must be accepted as true. Even if this were permissible, his factual arguments are not correct. For example, on page 2 of his reply brief, Mr. Rozek suggests that he amended the Trust and created his charitable foundation "in response to and following SLF's spiteful termination of Ms. Buffett's Letters Program …." The problems with this suggestion, as detailed in the Complaint, are that (a) Mr. Rozek is the person who had unilaterally begun operating the Warren's Letters program in Boston, without SLF's knowledge, starting with the publicity for the relocation that he had arranged in *The Boston Globe* in July 2016; (b) Mr. Rozek wanted to

---

[1] *Cf. Canter v. Comm'r of Pub. Welfare*, 423 Mass. 425, 431 (1996) (interest in revocable trust described as "mere expectancy" until settlor's death); *Old Colony Trust Co. v. Clemons,* 332 Mass. 535, 539 (1955) (where settlor of trust retains right to revoke, he intends that beneficiary's interest not vest until his death); *Estate of Sanford v. Commissioner of Internal Revenue,* 308 U.S. 39, 43–45 (1939) (transfer to revocable trust not complete until settlor's relinquishment at death of power to revoke).

4

take control of the program and operate it himself in Boston; (c) SLF did not "terminate" the program, but rather, in an email to Warren Buffett dated September 7, 2016, asked him to decide the future of the program; and (d) SLF posed this question to Warren Buffett out of concern for Ms. Buffett's health and well-being—not out of spite.  The only spite came from Mr. Rozek, who took the matter into his own hands by amending the Trust to divert SLF's beneficial interest in the Trust to his charitable foundation in Boston on September 8, 2016, the very next day after SLF had emailed Warren Buffett asking him to decide the future of the program.  Then, eight days later on September 16, 2016, Mr. Rozek filed the Articles of Organization for his charitable foundation in Boston.  All of this happened *prior* to SLF's vote on September 21, 2016 to discontinue its operation of the program.  In short, the timeline that Mr. Rozek suggests, and therefore his suggested justification for eliminating SLF's beneficial interest in the Trust, do not hold together.  In any event, these are contested issues of fact that cannot be resolved at this earliest stage of this litigation.

        Respectfully submitted,

        THE SUNSHINE LADY FOUNDATION, INC.

        By its counsel,

        */s/ Mark E. Swirbalus*
        Mark E. Swirbalus (BBO No. 631650)
        Rebecca Harris (BBO No. 699598)
        GOULSTON & STORRS PC
        400 Atlantic Avenue
        Boston, Massachusetts 02110
        (617) 482-1776
        mswirbalus@goulstonstorrs.com
        rharris@goulstonstorrs.com

Dated:  January 12, 2021

## CERTIFICATE OF SERVICE

      I hereby certify that a true copy of the above document was filed on January 12, 2021 through the ECF System and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Dated: January 12, 2021

/s/ *Rebecca Harris*
Rebecca Harris
