UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| THE SUNSHINE LADY FOUNDATION, INC., | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiff, | | |
| v. | | Civil No. 20-12146-LTS |
| ALEXANDER ROZEK, as Trustee of the Doris Buffett Revocable Trust | | |
| Defendant. | | |

ORDER ON PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT
(DOC. NO. 26) AND DEFENDANT'S MOTION TO DISMISS (DOC. NO. 9)

June 1, 2021

SOROKIN, J.

Before the Court are Plaintiff The Sunshine Lady Foundation's ("SLF") Motion for Leave to Amend the Complaint (Doc. No. 26) and Defendant Alexander Rozek's Motion to Dismiss (Doc. No. 9). For the reasons that follow, Plaintiff's Motion for Leave to Amend is ALLOWED and Defendant's Motion to Dismiss is DENIED AS MOOT.

I. FACTS

SLF brought this suit to enforce its purported interest and rights in a trust created by philanthropist Doris Buffett, who passed away in 2020. Doc. No. 1-1 at 4.[1] Ms. Buffett founded the Sunshine Lady Foundation in 1996 to "improve the lives of disadvantaged people, especially those whose disadvantage is overlooked by other philanthropists." Id. ¶¶ 5–6. Three of Ms.

---

[1] Citations to "Doc. No. __" reference documents appearing on the Court's electronic docketing system; pincites are to the page numbers in the ECF header.

Buffett's friends—Anne "Mitty" Ewing Beal, Diane Grimsley, and Rebecca Currie—were involved with SLF from the beginning and serve on its Board of Directors. Id. ¶ 7. SLF alleges that "it was always Ms. Buffett's publicly-stated intention to give all of her money away during her lifetime, primarily through SLF, to help disadvantaged people" and if she were unable to do so, she "intended that whatever money remained upon her death would go to SLF to continue her charitable work." Id. ¶ 12. Ms. Buffett memorialized this intention by creating the Doris Buffett Revocable Trust (the "Trust") and named SLF as the primary beneficiary of the Trust after her death. Id. ¶¶ 12–13. SLF alleges that over the years, Ms. Buffett repeatedly told Beal, Grimsley, and Currie that SLF was and would be the primary beneficiary of the Trust after her death and Beal would be a successor trustee. Id. ¶¶ 13–16.

On October 4, 2012, Ms. Buffett, whose health was declining, signed a General Power of Attorney naming her grandson Alexander Rozek as her attorney-in-fact. Id. ¶¶ 17–18. By 2016, she was suffering from advanced dementia. Id. ¶ 19. In September 2016, following a dispute between Rozek and SLF board members over the operation of a philanthropic program called the "Warren's Letters" program, Rozek initiated an audit into SLF's finances and created a new charitable foundation, The Sunshine Lady Humanitarian Grants Program, Inc. ("SLHGP"), to take over the Warren's Letters program. Id. ¶¶ 24–26, 30, 34, 43. Tensions continued to escalate between Rozek and the rest of the SLF Board, culminating in a Settlement and Release Agreement dated December 11, 2017. Id. ¶ 42. SLF alleges that the "purpose of the Settlement and Release Agreement was to memorialize Ms. Buffett's and Alexander [Rozek]'s respective resignations from SLF's Board of Directors, and the transition of the Warren's Letters program from SLF to Alexander [Rozek]'s charitable foundation in Boston." Id. ¶ 43. The Settlement and Release includes the following language:

> **GENERAL RELEASE OF SLHGP PARTIES.** Subject only to their continuing obligations under this Agreement, SLF, Ms. Grimsley, Ms. Beal, and Ms. Currie (collectively, the "SLF Parties") on behalf of themselves, in all capacities, and on behalf of their agents, representatives, directors, officers, employees, subcontractors, managers, members, affiliates, affiliated entities, trustees, executors, personal representatives, administrators, successors, and assigns, do hereby irrevocably and unconditionally release, cancel, acquit, relinquish and forever discharge SLHGP, Ms. Buffett, and Mr. Rozek (collectively, the "SLHGP Parties"), in all capacities, along with the SLHGP Parties' agents, representatives, attorneys, directors, officers, employees, subcontractors, managers, members, affiliates, affiliated entities, trustees, executors, personal representatives, administrators, successors, and assigns from any and all claims, rights, demands, debts, commissions, accountings, contracts, controversies, agreements, fees, expenses, costs, liabilities, actions, or causes of action, whether known or unknown, asserted or unasserted, liquidated or unliquidated, fixed or contingent, or of any nature whatsoever, which the SLF Parties ever had or now have, arising out of any act, transaction, event, or occurrence from the beginning of time through the date hereof (including existing but unknown claims).

Doc. No. 11-1 at 3–4. Ms. Buffett passed away on August 4, 2020. Doc. No. 1-1 ¶ 48. Following her death, SLF learned that it was not a beneficiary of the Trust and Beal was not a successor trustee. Id. ¶ 49.

## II. PROCEDURAL HISTORY

SLF filed a complaint in state superior court on November 4, 2020, seeking a declaratory judgment that SLF is a beneficiary of the Trust. Doc. No. 1-1 ¶¶ 53–56. Defendant removed the case to federal court on December 1, 2020, Doc. No. 1, and filed a motion to dismiss on December 8, 2020, Doc. No. 9. Defendant's Motion to Dismiss argued that SLF's claims were barred by the Settlement and Release because SLF did not have any beneficial interest in the Trust when the release was executed in 2017. Doc. No. 10 at 6; Doc. No. 20 at 1–2. In support of this contention, Defendant attached the Eleventh, Twelfth, and Sixteenth Amendments to the Trust (collectively "Trust Amendments") as exhibits to his reply brief. See Doc. Nos. 21-1, 21-2, 21-3. All of the Trust Amendments took place prior to the Settlement and Release date of

December 11, 2017, and together they show that SLF was not a beneficiary of the Trust after April 2017 and that Rozek was the sole successor trustee of the Trust by December 2017.

After receiving this information, Plaintiff moved to file an Amended Complaint on February 8, 2021. Doc. No. 26. The proposed Amended Complaint seeks to join Alexander Rozek in his individual capacity and the Office of the Attorney General of Massachusetts, Public Charities Division ("AGO") as additional defendants.[2] Doc. No. 26-1 at 2. The proposed Amended Complaint also seeks to add claims for lack of testamentary capacity, undue influence, and interference with expectancy. Id. ¶¶ 61–67, 68–76, 77–81. Plaintiff states that "[t]he naming of these additional defendants and the inclusion of these additional allegations and claims are based on information contained in—or learned as a result of receiving—three selected amendments of the Trust that Mr. Rozek filed as exhibits to his Reply in Support of his Motion to Dismiss on December 30, 2020." Doc. No. 26 at 1. In sum, Plaintiff now seeks to bring claims based on the allegation that Rozek made himself the sole successor trustee of the Trust and diverted SLF's beneficial interest to his own foundation through amending the Trust while Ms. Buffett was suffering from advanced dementia. Defendant opposed, Doc. No. 27, and the Court held a hearing on May 27, 2021. The Court resolves the pending motions below.

### III. PLAINTIFF'S MOTION TO AMEND THE COMPLAINT (DOC. NO. 26)

#### A. Legal Standard

"The court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave may be denied, however, if SLF exhibited "undue delay in filing the motion, bad faith or dilatory motive, repeated failure to cure deficiencies, undue prejudice to the opposing

---

[2] At the hearing, the AGO informed the Court that it took no position on the Motion to Dismiss or the Motion to Amend and did not oppose Plaintiff's motion to add it as a defendant.

party, [or] futility of amendment." United States ex rel. Gagne v. City of Worcester, 565 F.3d 40, 48 (1st Cir. 2009). The inquiry into futility turns on whether the proposed Amended Complaint fails to state a claim upon which relief could be granted according to standards dictated by Fed. R. Civ. P. 12(b)(6). Hatch v. Dep't for Children, 274 F.3d 12, 19 (1st Cir. 2001).

### B. Discussion

Defendant opposes based on two grounds: first that the Settlement and Release acts as a complete bar to all claims in the proposed Amended Complaint, and second that Plaintiff's proposed amendment is based on "an improper fishing expedition disguised as a pleading." Doc. No. 27 at 14, 16. The Court addresses each argument below.

#### 1. Futility

Defendant first argues that the Settlement and Release bars SLF's proposed claims because, pursuant to the agreement, SLF "unconditionally release[d]" Rozek, in all capacities, from "any and all claims, rights, demands, debts, commissions, accountings, contracts, controversies, agreements, fees, expenses, costs, liabilities, actions, or causes of action, whether known or unknown . . . which the SLF Parties ever had or now have, arising out of any act, transaction, event, or occurrence from the beginning of time through the date hereof (including existing but unknown claims)." Doc. No. 27 at 10 (quoting Settlement and Release, Doc. No. 11-1 at 3–4). Essentially, Defendant contends that the claims SLF now seeks to bring could have been brought as of December 11, 2017, when the Settlement and Release was signed.

Whether the proposed amendment is futile reduces first to whether Plaintiff could have asserted claims for lack of testamentary capacity, undue influence, and interference with expectancy during Ms. Buffett's lifetime prior to the Settlement and Release—if it could have, it would be barred from doing so in the instant case by the release language. If it could not have

asserted these claims prior to Ms. Buffett's death, the Court must then examine whether the release language bars claims that had not yet accrued as of the date of the Settlement and Release.

The Court first concludes that SLF could not have brought the claims it seeks to bring in the proposed Amended Complaint prior to Ms. Buffett's death in 2020. This issue is determined by either North Carolina or Massachusetts law,[3] but no party has alerted this Court to a case from either state that conclusively resolves the question of whether a former beneficiary of a revocable trust may bring a claim to contest his removal as a beneficiary during the settlor's lifetime.

Article 6 of the Massachusetts Uniform Trust Code states the following:

> (a) A person may commence a judicial proceeding to contest the validity of a trust that was revocable <u>at the settlor's death</u> within the earlier of:
> (1) 1 year after the settlor's death; or
> (2) 60 days after the trustee sent the person a copy of the trust instrument and a notice informing the person of the trust's existence, the trustee's name and address and the time allowed for commencing a proceeding.

Mass. Gen. Laws. ch. 203E § 604: Limitation on Action Contesting Validity of Revocable Trust; Distribution of Trust Property (emphasis added). In Massachusetts, "[w]here the language is clear and unambiguous, [a statute] is to be given its 'ordinary meaning.' Commonwealth v. Mogelinski, 1 N.E.3d 237, 243 (Mass. 2013). Moreover, "[i]t is a 'maxim of statutory construction . . . that a statutory expression of one thing is an implied exclusion of other things omitted from the statute.'" Metro. Prop. & Cas. Ins. Co. v. Emerson Hosp., 99 Mass. App. Ct.

---

[3] The Settlement and Release is governed by North Carolina law, Doc. No. 11-1 at 6, and parties filed this case in Massachusetts. At the hearing, counsel for both parties referenced Virginia law. Apparently, Ms. Buffett's hometown was Fredericksburg, Virginia. Doc. No. 26-1 ¶ 13. Defendant did not brief or cite Virginia law in his papers, while Plaintiff only noted that Virginia may be one of many potential states whose laws govern the Trust, Doc. No. 14 at 18. Thus, at this stage, the Court declines to consider the application of Virginia law to the Trust. Whether, and if so how, Virginia law applies may be addressed by the parties in the course of the litigation.

513, 522 (2021) (citing Harborview Residents' Comm., Inc. v. Quincy Hous. Auth., 332 N.E.2d 891, 895 (Mass. 1975)); see Skawski v. Greenfield Investors Prop. Dev. LLC, 45 N.E.3d 561, 568 (Mass. 2016) ("expressio unius est exclusio alterius"). "A court may not add words to [the] statute that the Legislature did not put there, either by inadvertent omission or by design." Bank of Am., N.A. v. Rosa, 999 N.E.2d 1080, 1084 (Mass. 2013) (citation omitted).

Following these directives, the Court interprets Article 6 of the Massachusetts Uniform Trust Code to mean that if a person has standing to challenge the validity of a revocable trust "at the settlor's death," he does not have standing to challenge the validity prior to the settlor's death—especially given that the section is titled "limitation on action."[4] Massachusetts caselaw confirms this interpretation. See, e.g., Canter v. Comm'r of Pub. Welfare, 668 N.E.2d 783, 787 (Mass. 1996) (describing interest in revocable trust as "mere expectancy" with "no legal force" until settlor's death); Old Colony Tr. Co. v. Clemons, 126 N.E.2d 193, 195 (Mass. 1955) (where settlor of trust retains right to revoke, he intends that beneficiary's interest not vest until his death).[5] Moreover, the Comment to Section 112 of the Massachusetts Uniform Trust Code

---

[4] In analyzing this issue under Massachusetts law, the Court is not concluding that Massachusetts law governs the dispute. The Court's analysis would be identical were it to apply North Carolina law. The North Carolina Uniform Trust Code contains the same language as the Massachusetts code limiting actions contesting the validity of revocable trusts. See N.C. Gen. Stat. § 36C-6-604 ("A person may commence a judicial proceeding to contest the validity of a trust that was revocable at the settlor's death within the earlier of: (1) Three years after the settlor's death; or (2) 120 days after the trustee sent the person a copy of the trust instrument and written notice . . .") (emphasis added). Moreover, North Carolina courts use the same process and interpretive tools as Massachusetts courts for statutory interpretation. See Hyler v. GTE Prods. Co., 425 S.E.2d 698, 701 (N.C. 1993) (noting that North Carolina courts first look to the plain meaning of the words used when engaged in statutory interpretation); Evans v. Diaz, 430 S.E.2d 244, 247 (N.C. 1993) (discussing application of the doctrine of expressio unius).

[5] North Carolina law also confirms this interpretation. See Livesay v. Carolina First Bank, 665 S.E.2d 158, 162 (N.C. App. 2008) ("the beneficiaries of a revocable trust have no vested rights, merely an expectancy").

explains that revocable trusts are "intended to be will substitutes." Mass. Gen. Laws ch. 203E § 112.[6]

This view is consistent with the view taken in New York as well as in a number of other jurisdictions that beneficiaries of a revocable trust do not have standing to sue during a settlor's lifetime but may assert claims following the settlor's death. See In re Estate of Davidson, 677 N.Y.S.2d 729, 730 (Surr. Ct. N.Y. Co. 1998) (noting that "revocable trusts . . . function essentially as testamentary instruments" and that "in view of the standing allowed a distributee to object to the probate of a will there is good reason to allow a distributee standing to contest a revocable trust instrument after its settlor has died"); Marcus v. Quattrocchi, No. 08 CV 9514 VB, 2012 WL 336155, at *3 (S.D.N.Y. Jan. 31, 2012) (citing Davidson for the proposition that beneficiaries "acquired standing" only upon death of settlor); Linthicum v. Rudi, 148 P.3d 746, 748–49 (Nev. 2006) (holding that beneficiaries do not have standing to challenge a trust during settlor's lifetime); Lewis v. Star Bank, N.A., 630 N.E.2d 418, 420 (Ohio App. 1993) (same); Ullman v. Garcia, 645 So. 2d 168, 169 (Fla. Dist. Ct. App. 1994) (same).[7] While Defendant asserts that "[c]ourts have concluded that a beneficiary of a trust—including a revocable trust—has standing to challenge an amendment during the donor's lifetime," Doc. No. 27 at 15 (emphasis added), he only cites one case in support of that proposition and it is from an intermediate appellate court in Illinois, id. (citing In re Estate of Michalak, 934 N.E.2d 697, 707

---

[6] Likewise, the North Carolina Uniform Trust Code states in the Comment to N.C. Gen. Stat. § 36C-1-112 that a revocable trust is "used primarily as a will substitute."

[7] Neither party contends that Plaintiff lacks standing as a former beneficiary to challenge the trust upon the death of Ms. Buffett. In any event, a "substantial majority" of states have concluded that a former beneficiary has standing to sue where a change of beneficiary occurred due to alleged undue influence. Estelle v. Cunningham, 982 So. 2d 1086, 1090 (Ala. 2007) (citing Cobb v. Justice, 954 S.W.2d 162, 167 (Tex. App. 1997)); see also, e.g., Barefoot v. Jennings, 456 P.3d 447, 448 (Cal. 2020).

(Ill. App. 2010)).[8] The Court is unpersuaded that Defendant presents the governing law on this issue. Plaintiff did not have standing to assert the claims it alleges in the Proposed Amended Complaint during Ms. Buffett's lifetime.

Notwithstanding this conclusion, Defendant contends that the broad language of the Settlement and Release still bars any "future" claims (i.e., claims that could accrue against a party following the December 11, 2017 signing of the Settlement and Release). Defendant points to the broad language of the Settlement and Release, as well as the parties' intent in drafting, which he contends was to fully terminate any relationship between SLF and Rozek. These arguments fail to defeat SLF's Motion to Amend for a few reasons. First, the issue now before the Court is not whether the encompassing language of the Settlement and Release (e.g., releasing "claims," "rights," "liabilities," and "debts," whether "fixed or contingent," "known or unknown," that parties "ever had or now have," Doc. No. 11-1 at 3–4) released the present claims. Rather, at this stage of the case, all the law requires is for Plaintiff to demonstrate that its claims are not "futile," or that Plaintiff plausibly states claims. With this legal lens in mind, the Court makes its determination not only in light of the language of the release, but also the allegations of the proposed Amended Complaint and North Carolina law, which all parties agree governs the interpretation of the Settlement and Release.

The language of the release itself says parties release the "claims," "rights" etc. that they "ever had or now have" on December 11, 2017. Id. Additionally, the proposed Amended Complaint alleges that the parties negotiated over and removed Defendant's proposed language

---

[8] Moreover, Illinois adopted the same trust code language as Massachusetts and North Carolina in 2019. See 760 Ill. Comp. Stat. 3/604 ("A person may commence a judicial proceeding to contest the validity of a trust that was revocable at the settlor's death only within the earlier of . . . 2 years after the settlor's death . . ."). The Court is unaware of any decision examining or applying Michalak in light of the 2019 adoption of the Illinois Trust Code.

from the Settlement and Release, which would have also released "claims," "rights" etc. that parties "might have in the future." Doc. No. 26-1 ¶ 50.[9] This allegation further limits the reach of the Settlement and Release at this stage of the case, where the Court must "accept as true all well-pleaded allegations" in the proposed Amended Complaint. Cooperman v. Individual, Inc., 171 F.3d 43, 46 (1st Cir. 1999). Finally, the Settlement and Release is governed by North Carolina law, and in North Carolina, future claims are not waived by default in a general release. Travis v. Knob Creek, Inc., 362 S.E.2d 277, 279 (N.C. 1987) (in a release agreement, "demands subsequently maturing or accruing, are not as a rule discharged by the release unless expressly embraced therein or falling within the fair import of the terms employed"). Thus, Plaintiff's proposed claims are not "futile" even in the face of the Settlement and Release.

### 2. Bad Faith or Impropriety

Defendant next argues that the Court should deny Plaintiff's Motion to Amend because while "Plaintiff claims that it is not seeking to amend [the] Complaint in 'bad faith' . . . it has been clear that Plaintiff filed a discovery motion under the guise of a Complaint, in the hopes it could find a 'factual foundation' to support going after more money from [Ms. Buffett]." Doc. No. 27 at 16. Defendant characterizes these actions as an "improper fishing expedition." Id.

The Court rejects this argument for a few reasons. First, as Plaintiff notes, the original Complaint previews the exact claims Plaintiff added to the proposed Amended Complaint. See Doc. No. 1-1 ¶ 55 ("actual controversies exist as to . . . whether any such amendment [to the Trust] was legally ineffective because Ms. Buffett lacked testamentary capacity, or because the amendment was the result of undue influence or tortious interference with SLF's expectancy").

---

[9] No party has argued that the integration clause in the Settlement and Release, Doc. No. 11-1 at 5, prevents the Court from considering this allegation.

Defendant was not without notice as to the form or contents of the proposed amendment. Apart from factual allegations related to the Trust Amendments, the original Complaint and the proposed amended version are nearly identical. Allowing Plaintiff to amend does not prejudice Defendant at this stage of the case. Cf. El Dia, Inc. v. Rossello, 30 F. Supp. 2d 160, 165 (D.P.R. 1998) (finding no bad faith or dilatory action on part of plaintiff and allowing amendment where "[l]eave to amend should neither expand the scope of discovery nor cause a disruption in the discovery or trial schedule" and "[t]he amended complaint is premised upon the same nucleus of operative facts as the original complaint and, therefore, Defendants will not be subject to any unfair surprise, undue delay or prejudice").

Moreover, turning to the Trust Amendments, the Court notes that while Defendant tries to characterize Plaintiff's Complaint as an improper "discovery motion," Defendant had no obligation at all to attach the Trust Amendments to his motion papers. He produced these documents voluntarily as support for an argument that he chose to make. The Court does not discern any bad faith or impropriety in Plaintiff's motion to amend based on the Trust Amendments, particularly when SLF did so without undue delay upon receipt of these documents.[10] See, e.g., Guest-Tek Interactive Ent., Inc. v. Pullen, 731 F. Supp. 2d 80, 94 (D. Mass. 2010) (while undue delay can be a basis for denial of a motion to amend, "filing of the motion promptly after the discovery of [additional evidence], is indicative of a good faith motive"); City of Manchester v. Nat'l Gypsum Co., 637 F. Supp. 646, 656 (D.R.I.

---

[10] Defendant filed the Trust Amendments with his reply brief on December 30, 2020. Doc. No. 20. Plaintiff claims that it notified counsel for Defendant of its intent to file an amended complaint on January 11, 2021, twelve days after receiving the Trust Amendments. Doc. No. 26 at 2. Plaintiff filed the Motion to Amend on February 8, 2021. Id. at 1.

1986) (good faith evident where motion "has not come so late in the course of this suit that it will unreasonably delay the case or prejudice the various parties").

Ultimately, "there do not appear to be any facts in the record that clearly demonstrate [SLF's] alleged bad faith." Hilsinger Co. v. Kleen Concepts, LLC, 164 F. Supp. 3d 195, 201 (D. Mass. 2016). The Court does not view Defendant's arguments or the sequence of events established in the record as grounds to deny Plaintiff's motion, particularly when the Federal Rules favor allowing amendment when justice so requires. See Fed. R. Civ. P. 15(a)(2). SLF's proposed amendments are not futile, and the steps it took to propose amendment were timely and do not prejudice Defendant. For these reasons, Plaintiff's motion is ALLOWED.

## IV. DEFENDANT'S MOTION TO DISMISS (DOC. NO. 9)

Defendant's Motion to Dismiss (Doc. No. 9) responds to Plaintiff's original complaint. Because the Court allows Plaintiff's Motion to Amend as discussed above, Defendant's motion is DENIED AS MOOT. Defendant shall, within fourteen days, file his response to the amended complaint.

## V. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Leave to Amend Complaint (Doc. No. 26) is ALLOWED and Defendant's Motion to Dismiss (Doc. No. 9) is DENIED AS MOOT.

SO ORDERED.

/s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge